## WILLIAM POTTER *versus* JOSEPH HALL.

Whether a stagecoach when actually travelling is liable to be stopped and attached on mesne process, *quære*.

But a stagecoach was attached about the time fixed for its departure, when part of the horses were fastened to it and the passengers were engaged and ready to take their seats, and the attachment was held valid.

So of an attachment of a stagecoach which had been driven into the yard of the tavern where it was accustomed to put up at the place of its destination, but had not distributed all its passengers.

THIS was *trespass* against the defendant, as sheriff of the county of Suffolk, for the act of his deputy, in attaching on mesne process two stagecoaches and four harnesses belonging to the plaintiff, while he was using them for the conveyance of passengers.

At the trial, before *Putnam* J., it was proved, that one of the coaches was attached near the appointed time for starting from Boston to Salem, when some of the horses were fastened to it and eight or nine passengers were engaged and were ready to go in the coach. The other had arrived at Boston from Salem, and was attached in the yard where it used to put up, and into which it was not commonly driven until after all the passengers had been distributed, but there were two female passengers still in the coach waiting to be carried to their respective places of destination in Boston, and the horses were still fastened to it, at the time when it was attached.

The defendant submitted to a default, but if the Court should be of opinion that the action could not be maintained, the plaintiff was to become nonsuit.

*Nov. 4th.* *Oliver*, for the plaintiff. The attachment was illegal, because property situated like these coaches is exempted from attachment. Our law of attachment is borrowed from the English law of distress, and whatever was exempted from distress at common law in England, is exempted from attachment here, except where our statutes have made an alteration or the reason of the exemption has ceased ; neither of which is the case in the present instance. By the law of distress, whatever is in present use or occupation is exempt from distress ; as the hat on a man's head or the horse on which he

s riding ; for to allow of a distress under such circumstances would lead to perpetual breaches of the peace. *Simpson* v. *Hartop*, Willes, 513 ; *Story* v. *Robinson*, 6 T. R. 139 ; *Gorton* v. *Falkner*, 4 T. R. 565 ; *Hutchins* v. *Chambers*, 1 Burr. 579 ; Co. Lit. 47 *a*, and Hargr. notes. So also whatever cannot be restored in the same plight, is exempted from distress ; and in *Bond* v. *Ward*, 7 Mass. R. 128, this principle is admitted to be applicable to attachments. Vin Abr. Suppl. *Distress*, 536 ; 4 T. R. 568. Many things are exempted from distress, on the ground of public policy and because the convenience of trade seems to require it ; as a horse standing in a smith's shop to be shod ; cloth at a tailor's shop ; a horse which has carried articles to market and is standing in the market. *Read* v. *Burley*, Cro. Eliz. 549, 596.

**370**

This attachment was illegal also on account of the manner in which the property was used after it was attached. By severing a distress the distress becomes illegal ; for instance, it is lawful to distrain a horse and cart together, if found standing and not in actual use, but it is not lawful to take the horse from the cart or *vice versâ*. Vin. Abr. 173, 174, *Distress* (*R*) *pl.* 3, 8, 9.

All these principles are applicable to the present case. Both coaches were in actual use. Neither of them could be returned in the same plight ; that is, with the horses harnessed to them, and as to one coach, with eight or nine passengers engaged and ready to take their seats, and as to the other, with two passengers waiting to be carried to their places of destination. It may be said that the passengers might be carried in other coaches, but why might it not, in the same manner, have been said in *Simpson* v. *Hartop*, where a loom was held to be illegally distrained, that the stocking then weaving upon it might be woven upon another loom ? In making this attachment the officer severed both coaches from the horses, attaching only the coaches and harnesses. It is against public policy to suffer property of this kind, when in actual use, to be attached ; not merely because such attachments have a tendency to occasion breaches of the peace, but also because the interests of third persons may be injuriously

**34**

affected.  Suppose a coach full of passengers, and carrying the mail, to be travelling at full speed, shall an officer, with a writ for perhaps a trifling demand, be allowed to attach it and to turn out all the passengers with their baggage ?  Or shall he be allowed to attach the horses alone, leaving the coach standing in the road ?  Or suppose the coach to have stopped at the tavern between Salem and Boston, and the passengers to have gone into the tavern to pay their fare, shall an attachment be made at that moment ?  Perhaps it will be said that one of these coaches had arrived at the place of its destination ; but the answer is, that all the passengers had not been carried to their respective houses, and until then the coach had not earned its fare.  Persons who have engaged their passages and are ready to take their seats, may be exposed by an attachment to equal inconvenience with those who are already on the road, especially in places where another conveyance may not be so readily procured as in Boston.  When real estate under lease is attached it must be subject to the lease ; and personal property attached ought likewise to be subject to the contracts of the owner with third persons.

*Saltonstall, contrà.*  An attachment under our laws was originally like a distress, but afterwards the property attached was made a security to satisfy a judgment which might be recovered, and very little analogy remained.  In the progress of society many things have become liable to attachment here, which were not distrainable in ancient times ; as beasts of the plough ; books of a scholar ; utensils of trade ; and our statutes exempting certain articles from attachment, being in derogation of the common rights of creditors to secure their debts out of the property of their debtors, are to receive a strict construction.  Com. Dig. *Distress, C* ; 2 Inst. 132 ; *Buckingham* v. *Billings,* 13 Mass. R. 85 ; 5 Dane's Abr. 36 ; *Badlam* v. *Tucker,* 1 Pick. 389 ; *Daily* v. *May,* 5 Mass. R. 313 ; *Campbell* v. *Johnson,* 11 Mass. R. 184 ; *Penhallow* v. *Dwight,* 7 Mass. R. 34.  Our writ of attachment is like a *fieri facias,* so far as it regards the kind of property to be taken.  2 Tidd's Pr. 917 ; *Pierce* v. *Jackson,* 6 Mass. R. 243 ; *Hutchins* v. *Chambers,* 1 Burr. 588

The articles here attached were not of such a kind, nor so in use, as to come within the principle, that things in actual use shall not be distrained.  As to the objection of severance, in a late case respecting an anchor, it was indeed held that while it was in actual use the cable could not be cut, as it might be detrimental to the ship ; but no injury could happen here, as one of the coaches had not begun and the other had finished its course.  The argument *ab inconvenienti* is the strongest one urged on the other side, but that would extend equally to steamboats and other vessels, and so, if held valid, would exempt from attachment a vast amount of property.

*Cummins,* in reply, contended that steamboats, when in actual use in transporting passengers, would not be liable to attachment, and he remarked that so far as the great value of such property was an objection to its being exempted, a much larger amount of property was exempted by being in a process of manufacture.

The opinion of the Court was read as drawn up by

PARKER C. J.　If the coaches were not liable to attachment, it must be because they were chattels *actually in use,* not because they could not be returned in the same plight, which was the ground on which *Bond* v. *Ward* was settled. If any thing is capable of being returned in the same plight, it is such a vehicle, for being kept under cover, it will be more valuable than if all the time in the use of the owner. As to their being actually in use, we should not be willing to decide that on that account alone they were not attachable, for the same reason will apply with equal force to ships, steamboats, and other marine vehicles employed in the trans portation of goods or passengers, and I believe it has never yet been doubted, that under our laws such property is attach able.  We think however that it is not necessary to decide the question thus broadly, viz. that a ship or vessel actually under weigh with freight or passengers, or a stagecoach actually on the road travelling, is attachable.  There is dif ficulty in that question on both sides, but we feel clear that neither of the coaches was *so in use* when attached, as to be exempted.  One was preparing to go out, with two of the

horses hitched on, and the passengers engaged but not seated. We see not why, if the horses were in the barn harnessed and ready to be put to the coach, or the passengers had entered their names on the stage book the day before, the same reason for exemption would not exist. With respect to the other coach, it had arrived at its destined place, and although two female passengers were remaining in it expecting to be carried to their places of residence, yet this was not necessary, for they might have walked home, or the driver might without much inconvenience, if he was bound to see them at their houses, have provided other means of conveying them and their baggage.

It is said that property thus situated was not subject by the common law to distress for rent, and that the same law is to determine what property is or is not attachable under our statutes.

The principles of the common law will undoubtedly apply, because founded on reason, but the application of these principles may be different now, from that which was made several hundred years ago, when the rule was laid down. The state of the country then required larger exemptions than at present. Every thing then was subservient to agriculture. Now commerce and credit assume an equal rank, and things which were necessary for a man's living at a former period, have ceased to be so. And the parliament of Great Britain has regarded the change of circumstances in that kingdom, by providing in *St. 2 W. & M. c. 5*, that sheaves or shocks of corn, or corn in the straw, or loose, or hay upon a hovel, stack or rick, or otherwise, on the land, may be distrained for rent on a demise, lease or contract. And by *St. 11 Geo. 2, c. 19*, landlords are empowered to distrain all sorts of corn, grass, or other product growing on the estate demised, and to cut and gather them when ripe. These statutes, it is true, do not operate in this country, but the immemorial usage of the commonwealth under the various attachment laws, has a force equally binding ; and several judicial decisions have occured, in which it has been considered, that as the reasons of the old common law have ceased, so also has the law ceased. Thus in the case of *Campbell* v. *John*

Potter<br>*v.*<br>Hall.

*son*, 11 Mass R. 184, it was determined, that hay in a barn is liable to be attached on mesne process,[1] and *Sewall* C. J. expressly states as a ground of decision, that the condition of husbandry with us, and the circumstances of the country, did not require the application of the rule which the ancient common law was supposed to furnish. And in the case of *Penhallow* v. *Dwight*, it was decided, that corn standing in the field, if ripe, might be cut down and seized in execution.

The cases put in Com. Dig. to illustrate the general position, that chattels in actual use are not to be taken in distress, show that the rule was applied to things comparatively of small value, and such as could not be taken without great inconvenience, and in some of the cases they were other persons' property accidentally upon the land ; a horse actually in riding, or going to mill, or standing at the miller's door, &c. To apply a rule which had protected such kind of property, to articles of luxury, or of great value, would be contrary to the reason of the common law. Stagecoaches are often of great value, and many of them owned by the same person. Ships, steamboats, &c., come within the same reason ; creditors, and credit itself, would be exceedingly injured, if they were held free from attachment.[1]

**374**

Our legislature seems to have considered the common law in this respect as obsolete, or repealed by usage, in the several statutes they have enacted, exempting articles of small value, but of great necessity, from attachment.[2]

*Plaintiff nonsuit.*

---

See *Merrill* v. *Bryant*, 8 Pick. 397.

[1] It is held in Tennessee, that the tools of a mechanic may be levied on to satisfy a judgment against him, while he is using them. *Bell* v. *Douglass*, 1 Yerger, 397. See *Howard* v. *Williams*, 2 Pick. (2nd ed.) 84, note 1.

[2] As to what articles are subject to attachment and execution, see Revised Stat. *c.* 90, § 24, — *c.* 97, § 19, 20, 21 ; as to what are exempted, see Revised Stat. *c.* 97, § 22.